IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

|  |  |
|---|---|
| IN RE | ) |
| LA RUCHE IMPORTS, INC., | ) CASE NO. 07-30682-H3-11 |
| Debtor, | ) |

MEMORANDUM OPINION

The court has held a hearing on the "Debtor's Motion for Authority to Use Cash Collateral of Capital One, N.A. and Request for Preliminary Hearing Under Local Rule 4001(b)(2)" (Docket No. 2). The following are the Findings of Fact and Conclusions of Law of the court. A separate conforming Judgment will be entered. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

Findings of Fact

La Ruche Imports, Inc. ("Debtor") filed a voluntary petition under Chapter 11 of the Bankruptcy Code on February 2, 2007.

Debtor was organized in 1994, by Uche Kanu. Kanu is Debtor's sole shareholder and employee. Kanu testified that Debtor's initial business consisted of the importation of dried cod "stockfish," and sale of the stockfish to grocers and

specialty retailers.

In 1996, Debtor purchased a combined warehouse and office space, measuring approximately 6,000 square feet. Debtor's current business consists of the importation and sale of stockfish, canned fish items, and dairy items. Debtor stores the canned fish items in a leased facility, and stores the stockfish in its own warehouse.

On March 14, 2005, Debtor refinanced its real estate loan, in order to obtain a line of credit. Hibernia Bank, the predecessor in interest to Capital One, N.A., provided both the refinanced real estate loan and the revolving line of credit. The deed of trust executed with respect to the real estate loan states that the loan is secured by an interest in the warehouse. The security agreement with respect to the line of credit states that the line of credit is secured by inventory, accounts, and general intangibles.

Kanu testified that, during 2005, Debtor had its best year since its inception, reaching gross sales of $2,503,000. He testified that Debtor expanded its sales by acquiring shelf space at Albertson's, a large grocery retailer with a national presence. He testified that, in order to obtain the shelf space in Albertson's stores, he was required to pay extensive "set up charges" to Albertson's.

Kanu testified that, during 2006, Albertson's stores were acquired by two separate entities. One of the entities continued to purchase products from Debtor. The other entity declined to do business with Debtor. He testified that Debtor's sales during 2006 fell to approximately $1.5 million, and that Debtor was left with a large quantity of spoiled fish.

On Between September 1, 2006 and September 9, 2006, Kanu wrote several checks, totaling $26,500, payable to himself, from Debtor's deposit account at Capital One. Kanu testified that, although Debtor maintains a deposit account at Capital One, Debtor's operating account is held at Amegy Bank. He testified that he wrote the checks to himself in order to obtain funds to deposit in Debtor's operating account at Amegy Bank.

One or more of the checks Kanu wrote on Debtor's account at Capital One caused an "overdraft." When that occurred, the monitoring of Debtor's loans was assigned to Mario Martinez, a vice president at Capital One. Martinez testified that, when the loan file was assigned to him, Capital One lacked current financial reports for Debtor. He testified that he requested access to Debtor's books and records by an auditor.

Kanu testified that he provided access to the auditor. He testified that he gave the auditor records of Debtor's inventory, dated October 31, 2006, and accounts receivable, dated September 30, 2006.

Kanu testified that the inventory records given to the auditor were incorrect, because they included as inventory large quantities of spoiled fish. He testified that the spoiled fish was not kept in Debtor's warehouse for the auditor to examine. He testified that he made an adjustment, at the end of 2006, to reflect the loss of the spoiled fish, and to reconcile Debtor's records with a physical inventory conducted by the entity from which Debtor leased the warehouse space for the canned goods. He testified that the value of the inventory (valued at cost) as of January 31, 2007, three days prepetition, was $423,000. He testified that the outstanding accounts receivable, as of the petition date, were $32,000.[1]

Kanu testified that, during late 2006, Debtor created an internet presence, in order to sell its products online. He testified that Debtor is attempting to reposition itself through a direct marketing campaign.

Martinez testified that the balance owed on the real estate note on the petition date was approximately $355,000. He testified that the balance owed on the line of credit on the petition date was approximately $525,000. He testified that the line of credit matured in August, 2006.

---

[1] This amount reflects a reduction from Debtor's books and records based on an offset of amounts owed to Debtor by Albertson's and the remaining expenses for "set up charges" owed to Albertson's. Kanu testified that the net account receivable from Albertson's was less than $2,000.

4

Martinez testified that Capital One obtained an appraisal of the real property in connection with its refinancing of the note.  He testified that the appraised value of the real property during 2005 was approximately $450,000.

In the instant motion, Debtor seeks to use the cash collateral of Capital One, in order to finance its continued operations and reorganization.  Debtor has submitted a projected budget, reflecting $22,825 per month in operating costs, along with increasing sales and cost of goods sold.  Debtor proposes to make monthly adequate protection payments of $4,000 to Capital One, and $1,290 to Honda.

Capital One opposes the instant request, in light of Debtor's prepetition failure to provide accurate financial reporting.

## Conclusions of Law

Section 363(c)(2)(B) of the Bankruptcy Code provides:

> The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless–
>
> * * *
>
> (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c)(2)(B).

The court may allow the Debtor to use cash collateral upon such prohibition or condition as is adequate to provide protection of such other entity's interest.  Georgia Pacific

Corp. v. Sigma Service Corp., 712 F.2d 962 (5th Cir. 1983) (citing 11 U.S.C. § 363(e)).

In the instant case, Debtor appears to have a reasonable possibility of reorganization. Debtor's budget appears relatively lean, and appears to provide for the necessary expenses of the operations necessary to generate income to repay creditors.

With respect to adequate protection, the court finds that Debtor's offer of $4,000 a month in payments is sufficient to adequately protect Capital One, if Debtor complies with its non-monetary obligations under the Bankruptcy Code, the loan documents with Capital One, and this court's orders. Accordingly, a separate Judgment will be entered, authorizing Debtor to use the cash collateral of Capital One, subject to conditions as set forth in the Judgment.

Signed at Houston, Texas on February 8, 2007.

_____
LETITIA Z. CLARK
UNITED STATES BANKRUPTCY JUDGE